Commonwealth of Pennsylvania ex rel. J. McD. Scott *v.* John McAleese, Warden or Keeper of the County Jail of Allegheny County.

*Habeas corpus—Fraudulent insolvency.*

Where a person has been committed to prison for fraudulent insolvency under the insolvent laws, and has also been committed for contempt by the federal court in bankruptcy proceedings, and both the circuit court of the United States and the circuit court of appeals have refused to discharge him on writs of habeas corpus, and it also appears that an indictment for fraudulent insolvency against the prisoner is pending in the state criminal court, the Supreme Court will not release the prisoner on habeas corpus. In such a case all questions raised by the prisoner should be determined in the regular and orderly way, first, by trial on the indictment in the criminal court, and then, if need be, by appeal to the Superior Court, and ultimately and, provisionally, by appeal to the Supreme Court.

Petition for writ of habeas corpus. Miscellaneous Docket No. 1, No. 356. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Rule discharged.

The petition of J. McD. Scott alleged as follows:

1. He is a citizen of the state of Pennsylvania, resident in the county of Allegheny in said state; until October 12, 1898, he was engaged in the wholesale shoe business in the city of Pittsburg, and on that date he executed and delivered to J. Sharp McDonald a deed of voluntary assignment of all the estate, real and personal, of him, the said J. McD. Scott, for the benefit of his creditors, except that exempted to the amount of $300 under the laws of the state of Pennsylvania; said J. Sharp McDonald declined to accept the trust of assignee under the aforesaid deed and presented his resignation to the court of common pleas No. 3, of Allegheny county, Pennsylvania, at No. , term, 1898, of that court, and the said resignation was accepted and in the said proceeding S. Duffield Mitchell, Esq., was appointed assignee in the place and stead of J. Sharp McDonald; subsequently, on the day of , A. D. 1898, at Nos. 42, 43 and 45 in bankruptcy, in the district court of the United States for the western district of Pennsylvania, petitions were filed by the the Baltimore Boot

and Shoe Manufacturing Company (and sixteen others), creditors of your petitioner, to have him adjudicated a bankrupt, which petitions were finally consolidated at No. 94 in bankruptcy in said court, and in the said petitions it was averred that your petitioner had committed acts of bankruptcy, to wit: (1) That on August 29, 1898, he had conveyed a certain lot of ground in Reserve township, Allegheny county, Pennsylvania, to Renwick Scott, with intent to defraud his creditors; (2) that on September 19, 1898, he had executed and delivered a mortgage on certain real estate on Hiland avenue, in the city of Pittsburg, in said district, to Jennie I. Scott for $6,000, with intent to hinder, delay and defraud creditors; (3) that on October 1, 1898, he had concealed and removed a large stock of shoes to a store at Avonmore, Pennsylvania, called Avonmore Mercantile Company, with intent to hinder, delay and defraud creditors; (4) that on October 7, 1898, he had transferred, concealed and removed a quantity of shoes worth $4,000 to a store on Frankstown avenue, in the city of Pittsburg aforesaid, of which J. H. Caskey was proprietor, to hinder, delay and defraud creditors, and on October 12, 1898, he had made a general assignment for the benefit of his creditors; that said bankruptcy proceedings were so proceeded in that on December 3, 1898, your petitioner was adjudged a bankrupt, and S. Duffield Mitchell, Esq., was appointed temporary receiver of the estate of your petitioner, and subsequently the said S. Duffield Mitchell, Esq., was appointed trustee of said estate in bankruptcy.

2. On or about the      day of October, 1898, a number of the creditors of your petitioner made application to the Honorable S. A. McClung, a judge of the court of common pleas No. 3, of Allegheny county, Pennsylvania, for warrants of arrest, under the provisions of the act of the general assembly of the commonwealth of Pennsylvania, approved July 12, 1842, entitled " An act to abolish imprisonment for debt and to punish fraudulent debtors," and your petitioner, on said date, gave bond to the creditors of said petitioner conditioned to apply for the benefit of the insolvent laws of the state of Pennsylvania, as required in said statutes, and, in pursuance of said bond, he did, at No. 324, February term, 1899, present his petition to the aforesaid court of common pleas No. 3, of Allegheny county, praying for his discharge under the insolvent laws aforesaid, and the said

petition came on to be heard at a day fixed by the said court, to wit: January 21, 1899, and the discharge of your petitioner was opposed and testimony given on behalf of the creditors opposing said petition tending to show that your petitioner was guilty of fraudulent insolvency.

3. At the hearing upon the warrants of arrest before the said Honorable S. A. McClung, he contended, that by reason of the enactment of a general bankrupt law under the provisions of the constitution of the United States, approved by the congress of the United States, July 1, 1898, the insolvent laws of the state of Pennsylvania were superseded and the sole jurisdiction in relation to the matters complained of against your petitioner in the petitions for the warrants of arrest was in the bankruptcy courts of the United States of America, but, notwithstanding such contention, it was adjudged by the Honorable S. A. McClung, hearing the said warrants of arrest, that your petitioner could not be relieved from the said warrants except by complying with the provisions of the act of July 12, 1842, hereinbefore mentioned; and your petitioner therefore was compelled to, and did, give bond to take the benefit of the said insolvent laws as hereinbefore mentioned.

4. Subsequently, other creditors of your petitioner presented petitions at various times, praying for warrants of arrest and charging your petitioner with having fraudulently contracted the debts represented in said petitions, and with being guilty, substantially, of fraudulent insolvency, and the hearings on said warrants of arrest were adjourned from time to time until January 21, 1899, when, and at all times during the pendency of the said warrants of arrest, your petitioner opposed the right of the said creditors to have your petitioner arrested on the ground that the said judge had no jurisdiction to determine the matters alleged in said petitions, but the same were solely and only cognizable in the bankruptcy courts of the United States, in which your petitioner had already been adjudged a bankrupt.

5. On January 21, 1899, the aforesaid Honorable S. A. McClung, sitting as a judge of the aforesaid court of common pleas No. 3, and also sitting as a committing magistrate under said warrants of arrest hereinbefore mentioned, heard testimony in opposition to your petitioner's application for the benefit of the insolvent laws aforesaid, and in support of the

warrants of arrest, issued as hereinbefore mentioned, and the said court as a court refused to discharge your petitioner, and issued its commitment directed to the sheriff of Allegheny county, Pennsylvania, and the keeper of the common jail of said county, reciting that, after hearing the evidence offered at No. 324, February term, 1899, aforesaid, it appeared to the court that there was just ground to believe that your petitioner had concealed moneys, goods, building material, plumbing material, books and valuable articles, being part of his estate and effects, and that he had colluded with other persons for such concealment, and that he had conveyed property to other persons for the use of himself and friends, with the expectation of receiving future benefits to himself and with the intent to defraud his creditors, and directing that your petitioner should be committed for trial on the charge of fraudulent insolvency before the court of quarter sessions of Allegheny county, Pennsylvania, and your petitioner is now in the custody of the jailer of said county of Allegheny, under said charge, and has been ever since January 21, 1899, and on May 3, 1899, at No. 464, March sessions, 1899, in said court of quarter sessions, an indictment has been found against him on said charge of fraudulent insolvency, which is still pending and undetermined.

6. Under the same testimony taken on January 21, 1899, the said Honorable S. A. McClung, acting as a committing magistrate, your petitioner not having paid the debts claimed against him by his several creditors, or having given bond to pay the same, and not having given a bond to take the benefit of the insolvent laws of the state of Pennsylvania, issued his commitment, a copy of which is as follows:

" Allegheny County, ss.:

" The Commonwealth of Pennsylvania to Harvey A. Lowry, Sheriff, and the Keeper of the Common Jail of Allegheny County, Greeting:

" Whereas, on December 15, 1898, certain applications were made to the Honorable S. A. McClung, one of the judges of the court, by David Cummings Shoe Company, Bloomfield Shoe Company and other persons, on the oaths of George F. Bean and Charles L. Lewando, reciting that one J. McD. Scott had fraudulently contracted the debts upon which the suits of above-

named parties had been brought in said court, and alleging
that said Scott had concealed his property with intent to de-
fraud his creditors; and whereas, the said judge issued war-
rants of arrest on said application, upon which said Scott was
arrested, and after certain adjournments of the hearing the said
matters came on for a hearing before the said judge on Janu-
ary 21, 1899, pursuant to said adjournments; and whereas,
on said hearing, after hearing the evidence offered by the par-
ties, the said judge was satisfied that said J. McD. Scott has
done the acts specified in the affidavits upon which said war-
rants were issued; now these presents are to command you,
the said sheriff, to take the body of the said J. McD. Scott and
deliver him into the custody of the keeper of the common jail
of Allegheny county, and you, the said keeper, are required to
receive the said J. McD. Scott and him safely keep until he
shall be discharged by due process of law.

"Witness the Honorable S. A. McCLUNG, our said judge,
this 21st day of January, 1899.

"S. A. McCLUNG,
"Judge of C. P. No. 3.

"Attest:

"A. J. McQUITTY, Pro.
[Seal of the court of common pleas
No. 3, of Allegheny county.]

"To the said sheriff of the said county of Allegheny, and
keeper of the common jail of said county."

7. It would have been utterly futile for your petitioner to
have given bond to take the benefit of the insolvent laws of
the state of Pennsylvania, pending the warrants of arrest heard
on January 21, 1899, as aforesaid, because the alleged facts
were the same as in the insolvency proceedings at No. 324,
February term, 1899, and because if such petition had been
before the court, a discharge would have been refused on the
ground of fraudulent insolvency as in the petition for discharge
under the insolvent laws now pending, and because your peti-
tioner denied jurisdiction either of said court or of said judge
sitting as a committing magistrate, and contended that the sole
and exclusive jurisdiction was in the courts of the United States
under the provisions of the bankruptcy law approved July 1,

1898 ; and under said commitment your petitioner would have been liable to give bail in the sum of upwards of $150,000, even if he had decided to apply for the benefit of the said insolvent laws, which he was and still is unable to do.    Under the last recited commitment he has ever since been in the custody of the keeper of the common jail of Allegheny county, Pennsylvania.    In the bankruptcy proceedings hereinbefore mentioned an attachment was issued against him and lodged with the keeper of the common jail of Allegheny county, Pennsylvania, for commitment for not appearing to testify in the district court of the United States, and he avers that since the said attachment was lodged with the keeper of the common jail of the county of Allegheny, Pennsylvania, under a writ of habeas corpus issued for that purpose, he appeared before the referee in bankruptcy in and for the western district of Pennsylvania, and he then and there submitted himself to an examination in all matters concerning which he could be lawfully examined, as he is advised and believes ; and as to certain matters he declined to submit to an examination, claiming his privilege on the ground that the matters inquired of might tend to incriminate him, and his refusal to testify to such matters being certified to the district court of the United States in and for the western district of Pennsylvania, that court sustained him in his refusal to so testify, and he was thereupon released from said attachment and in all respects purged himself of such contempt, and was no longer detained by the warden aforesaid on said attachment.

8. Your petitioner is advised and believes that all of the proceedings hereinbefore recited, save and except the attachment aforesaid, are illegal, and that neither the said court of common pleas No. 3, of Allegheny county, Pennsylvania, nor the said Honorable S. A. McCLUNG, sitting as a committing magistrate, under the provisions of the act of assembly of the commonwealth of Pennsylvania approved July 12, 1842, hereinbefore recited, had any jurisdiction to arrest and detain, or cause to be arrested and detained, the body of your petitioner for the matters aforesaid in the various proceedings hereinbefore recited, and he avers, on the contrary, that he is advised and believes that upon the matters referred to in the said proceedings and petitions the sole and exclusive jurisdiction is in the courts of the United

States under the provisions of the present bankrupt laws thereof; your petitioner annexes hereto a full, true and correct copy of one of the petitions and warrants of arrest hereinbefore mentioned, which, except as to the name of the creditor and the amount of the debt, is a complete copy of each and every petition for warrant of arrest filed against him, as hereinbefore recited.

9. At No. 41, May term, 1899, on January 25, 1899, in the circuit court of the United States for the western district of Pennsylvania, your petitioner filed his petition for a writ of habeas corpus directed to John McAleese, warden and keeper of the common jail of Allegheny county, aforesaid, based upon the facts hereinbefore set forth, and the case was so proceeded in that on February 17, 1899, the court allowed a writ of habeas corpus as prayed for, directed to the said John McAleese, returnable on February 23, 1899, and in answer to the said petition in said court the said warden made return that he held your petitioner in his custody by virtue of the several commitments hereinbefore mentioned, and the attachment in the said district court hereinbefore mentioned, and upon hearing upon said petition the said circuit court of the United States, on March 1, 1899, discharged the said writ of habeas corpus and remanded your petitioner to the custody of the said warden, and thereupon your petitioner sued out his writ of error to the United States circuit court of appeals in and for the third circuit, at No.       , term, 1899, and the said writ of error came on to be heard, and was argued by your petitioner's counsel and counsel for the creditors opposing said writ of habeas corpus, and after due consideration, on April 20, 1899, an opinion of the said circuit court of appeals was filed affirming the judgment of the circuit court of the United States for the western district of Pennsylvania, not upon the ground that your petitioner's contention upon the question of jurisdiction was ill founded, but upon the ground that the question ought not to be determined by that court upon petitioner's then appeal or writ of error. The said court held that your petitioner's " remedy in the state courts should first be pursued; and if he fails to enforce there whatever right he may possess under the federal law, he may safely rely upon liberation at the hands of the courts of the United States," and your petitioner annexes hereto a full, true and correct copy of the said opinion.

On May 1, 1899, your petitioner presented to the Superior Court his petition for a writ of habeas corpus for the matters hereinbefore alleged, except that at that date no indictment for fraudulent insolvency had as yet been found against him; and thereupon said Superior Court granted a rule to show cause why said writ of habeas corpus should not issue, and afterwards an argument was had in which the granting of the writ was opposed by certain intervening creditors of your petitioner, and on May 10, 1899, the said Superior Court filed an opinion, a true copy of which is hereto attached, denying that it had jurisdiction or authority to discharge the said rule. Subsequently, on May 11, 1899, the said Superior Court, on application of your petitioner, granted a rule to show cause why he should not be allowed to amend his petition by averring, as recited in the fifth paragraph of this petition, that an indictment for fraudulent insolvency, as hereinbefore recited, had been found against him on May 3, 1899, at No. 464, March sessions of the court of quarter sessions of Allegheny county, and that the said indictment is still pending and undetermined, and also granted a rule to show cause why a reargument should not be had; and subsequently, on May 18, 1899, said Superior Court filed an opinion denying its jurisdiction in the premises, and made an order allowing the amendment aforesaid, and an appeal to your honorable court.

Said appeal so allowed has been taken by your petitioner, and he avers that he believes that a full consideration of his case and proper presentation of his rights in the premises can best be had by the presentation of this petition in addition to the taking of the appeal.

Your petitioner, therefore, being remitted by the decision of the United States circuit court of appeals in and for the third district, to the tribunals of the state of Pennsylvania for relief in reference to the matters hereinbefore alleged, prays your honorable court to issue a writ of habeas corpus for his relief in the premises, directed to John McAleese, warden or keeper of the common jail of the county of Allegheny, state of Pennsylvania, in whose custody your petitioner is now unlawfully detained, commanding him to bring before your honorable court the body of him, the said J. McD. Scott, and show cause, if any he hath, why the said J. McD. Scott, your petitioner, should not be

relieved of said illegal restraint, and delivered out of the custody of said warden or keeper.

The following is a chronological table of the proceedings in the case:

1. October 12, 1898: J. McD. Scott made voluntary assignment for the benefit of creditors to J. Sharp McDonald.

2. October 13, 1898: Scott arrested on bench warrants of Cheshire Shoe Manufacturing Company and Cloutman, Dunham & Company.

3. October 20, 1898 : Scott arrested on bench warrants of five other creditors, Dunn & McCarthy, C. S. Goddard & Company, Perkins, Linscott & Company, H. B. Reed & Company and Stowe, Bills and Hawley Company. All of these seven creditors alleged that their debts were fraudulently contracted. The pleadings in their suits alleged that the debts were fraudulently contracted, and these suits have been reduced to judgment.

4. November 2, 1898: Petitions in involuntary bankruptcy filed by creditors other than above.

5. November 12, 1898: Final hearing in above bench warrant cases, and Scott gives bond in $42,000 to apply for discharge under state insolvent laws.

6. December 3, 1898: Adjudicated a bankrupt.

7. December 15, 1898: Scott arrested on thirty more bench warrants issued in state court by creditors alleging fraudulent contracting of debt aggregating $50,979.97.

8. January 21, 1899: Final hearing on the thirty bench warrants; Scott committed.

9. January 21, 1899: Final hearing on petition for discharge under insolvent laws, and Scott committed on criminal charge of fraudulent insolvency.

10. January 25, 1899: Scott applied for habeas corpus from United States circuit court.

11. April 20, 1899: Opinion handed down by United States circuit court of appeals affirming judgment of circuit court discharging writ.

12. April 24, 1899: Scott applies for habeas corpus to Superior Court of Pennsylvania.

13. May 1, 1899: Application argued in Superior Court.

14. May 3, 1899: Scott indicted for fraudulent insolvency.

15. May 10, 1899: Superior Court discharges rule for habeas corpus.

16. May 18, 1899: Superior Court allows amendment to petition, but refuses reargument.

17. May 22, 1899: Scott applies for habeas corpus to Supreme Court of Pennsylvania.

*J. S. Ferguson,* with him *E. G. Ferguson, John Marron, J. A. Langfitt* and *W. B. Rodgers,* for petitioner.—The bankruptcy law ipso facto suspended all action upon future cases under the insolvent laws of the state by necessary implication from its own terms: Tua v. Carriere, 117 U. S. 201; Com. v. O'Hara, 6 Phila. 402; Ogden v. Saunders, 12 Wheat. 213; Van Nostrand v. Carr, 30 Md. 128; In re Reynolds, 8 R. I. 485; Martin v. Berry, 37 Cal. 208; Ex parte Eames, 2 Story, 322; Griswold v. Pratt, 9 Metcalf, 16; Nesbit v. Greaves, 6 W. & S. 120; Barber v. Rodgers, 71 Pa. 362; Blanchard v. Russell, 13 Mass. 1; Zeigler v. Shomo, 78 Pa. 357; Barr v. Bartram, 41 Conn. 502; Martin v. Berry, 37 Cal. 208; Sturges v. Crowninshield, 4 Wheaton, 122.

From time immemorial the right of a court to inquire into unlawful imprisonment has been as boundless as the instances of such imprisonment. The law has never recognized a limit as to the cases in which the court will or will not inquire into illegal restraint or imprisonment: People v. Bradley, 60 Ill. 401; Ex parte Siebold, 100 U. S. 371; Ex parte Clarke, 100 U. S. 399.

If in the fraudulent insolvency case the petitioner had been convicted, undoubtedly his remedy would have been by appeal, but there has been no trial, not even an indictment. This fact marks the distinction between our case and those that hold that the remedy must be by appeal: Tomlin's Law Dict. 63; People v. Bradley, 60 Ill. 401.

*Way, Walker & Morris* and *W. A. Blakeley,* contra, made no oral reply, but argued in their printed brief: On habeas corpus the court must consider all the causes of the prisoner's detention, and if any of these be valid or be matters beyond the jurisdiction of the court applied to, the prisoner can only be remanded: 2 Spelling on Extraordinary Relief, p. 79; Ex parte Gibson, 89 Ala. 174; Ex parte Ryan, 10 Nev. 261; Kennedy v. Howard, 74 Ind. 87; Miller v. Allen, 11 Ind. 389; People v. Liscomb,

60 N. Y. 559; In re Macke, 31 Kan. 54; People v. Jacobs, 66
N. Y. 8; Ex parte Peters, 4 Dill. 169; 12 Fed. Rep. 461; U. S. v.
Patterson, 29 Fed. Rep. 775; Ex parte Roberts, 9 Nev. 44; In re
Jackson, 3 McArthur (D. C.), 24; In re Snow, 120 U. S. 274.

Nor will the court review indirectly on habeas corpus what
could not come directly before it on appeal: Com. v. Lecky, 1
Watts, 66; Passmore Williamson's Case, 26 Pa. 9.

With regard to the indictment for fraudulent insolvency this
is a matter that, if it comes up for review at all, must come be-
fore the Superior Court: Petition of Quay, 189 Pa. 517.

PER CURIAM, July 19, 1899:

The several causes of relator's alleged illegal detention, im-
prisonment, etc., and the judicial proceedings leading up thereto,
are so fully set out in his petition for a writ of habeas corpus
that it is unnecessary to recite them here. A brief reference to
some of them will be quite sufficient for present purposes.

One of said causes is the commitment issued by the court of
common pleas No. 3, of Allegheny county, reciting criminal
charges, substantially the same as set forth in paragraph five of
relator's petition. That commitment, to answer said charges
in the court of quarter sessions of said county, was soon fol-
lowed by an indictment based on said charges, duly found in
said court, and still pending there.

Another of said causes is the warrant issued by one of the
judges of said court of common pleas, a copy of which, with
its recitals, etc., is given in full in paragraph six of the relator's
petition.

The remaining cause of relator's detention, etc., is the com-
mitment lodged against him for contempt of court in refusing
to answer certain questions in bankruptcy proceedings had
therein.

For the purpose of affecting his discharge from custody on
that and the two commitments above referred to he was granted
a hearing on a writ of habeas corpus in the circuit court of the
United States in and for the western district of Pennsylvania;
but, failing to convince the learned court that he was entitled
to the relief prayed for, the writ was dismissed and he was
remanded into the custody of the warden of the Allegheny
county prison. From that order he appealed to the circuit

court of appeals, and, upon hearing and due consideration, the judgment of that learned court was, "that the discretion of the circuit court was properly exercised in refusing to discharge the relator from custody; and accordingly the order of that court is affirmed."

Referring to said commitment for contempt, the learned judge of the court of appeals said, "As this commitment is formally unobjectionable, and has not been successfully attacked upon any ground appearing in the record, it would of itself support a judgment of affirmance." As to his suggestion—made in connection with this expression of opinion—"that the commitment for contempt should not be regarded as an existing process," etc., all that need be said by us is that we would not feel at liberty to so treat it, nor do we think that, in the circumstances, it would be proper for us to interfere with that commitment in any manner.

Before the indictment aforesaid was found in the court of quarter sessions, the relator applied to the Superior Court for a writ of habeas corpus to relieve him from custody under the commitments issued by said court of common pleas and one of the judges thereof, but, in an opinion by the learned president of that court, the rule to show cause was discharged on the ground that the court had no jurisdiction of the claims in controversy which resulted in said commitments, etc. After the indictment was found, he moved the court for leave to amend his petition, and for a rehearing, etc., and after consideration, that motion was denied.

With the exception of the habeas corpus proceedings, to which reference has been made, nothing appears to have been done by the relator towards obtaining a speedy trial of the pending indictment, or relieving himself from the commitment issued by one of the judges of said court of common pleas. As to the latter, he explains in paragraph seven of his petition why "it would have been utterly futile for him to have given bond to take the benefit of the insolvent laws," etc., and, in substance, he avers that if he had done so, his discharge would have been refused by the court, and he would have been committed to answer criminal charges similar to those laid in the indictment pending in the quarter sessions.

In form as well as in substance, the proceedings, in the state

courts, which led up to the commitments and the indictment, appear to have conformed to the long established practice of said courts in such cases, and nothing to the contrary is asserted, but it is averred that the state laws under which said proceedings were had were suspended or nullified by the United States bankrupt law of July 1, 1898. On that subject the relator, in paragraph eight of his petition, substantially avers that neither said court of common pleas nor the judge thereof, sitting as a committing magistrate, or otherwise, "had any jurisdiction to arrest and detain or cause to be arrested and detained the body of your petitioner for the matters aforesaid in the various proceedings hereinbefore recited," and he further avers that "upon the matters referred to in the said proceedings and petitions, the sole and exclusive jurisdiction is in the courts of the United States under the present bankrupt laws thereof," etc.

In accordance with these averments, one of the five propositions insisted on by the learned counsel for the relator is:

"2. That the bankrupt law of July 1, 1898, expressly provides for the discharge of the bankrupt from all his provable debts, and that includes debts as such, whether fraudulently contracted or not."

Another is:

"4. That the insolvency laws of the state of Pennsylvania are suspended by the bankrupt law of July 1, 1898, so far at least as they may be alleged to afford a creditor the means of collecting his debt as such."

Notwithstanding the able argument of the relator's counsel, we are not prepared to assent to these and other propositions as they are presented, nor do we think there is anything in the facts and circumstances of the case that makes it necessary or proper for us to express any further opinion as to the merits of said propositions. Under the evidence before us, some of them, at least, appear to involve mixed questions of law and fact. One of these questions is: To what extent is the operation of our state insolvent laws suspended or nullified by the bankrupt laws of the United States now in force? Another is: To what extent, if any, has the jurisdiction of our state courts to try and dispose of criminal charges for distinct and specific violation of our criminal code been suspended or superseded by said bankrupt laws?

As we understand the nature of the charges laid in the indictment found and still pending in the court of quarter sessions of Allegheny county against the relator, his defense thereto necessarily involves, chiefly perhaps, the determination of questions such as those above specified, and other questions of fact that are proper for the consideration of a jury.

No sufficient reason is shown why the questions referred to should not be determined in the regular and orderly way, first, by trial on the indictment in the court of quarter sessions, and then, if need be, by appeal to the Superior Court, etc. If the positions assumed here by the relator are correct, a fair and impartial trial in that court would presumably result in acquittal, and that would virtually settle, in his favor, all the disputed questions both of law and fact. If, on the other hand, error should intervene in the trial court he has the right of appeal to the Superior Court, and, provisionally, the further right of appeal from the judgment of that court to this court, etc.

In the absence of any reason for passing by the regularly appointed trial court and intervening appellate court, and thus virtually transferring directly to this Court the entire controversy, the relator should be required to first exhaust his remedies in said courts before applying to us. Aside from any question as to the validity of the proceedings thus far in the state courts, the circumstances of this case, as they appear to us, justify that course.

On the hearing of the rule to show cause, we were all satisfied that, in view of all the circumstances of the case, the rule should not be made absolute, and we are still of that opinion.

The rule to show cause is accordingly discharged and petition dismissed at the relator's costs.